UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER ZACHARCZUK,<br><br>Plaintiff,<br><br>v.<br><br>REGO TRADING, INC., *et al.*,<br><br>Defendants. | Civil Action No.<br><br>19-20022 (SDW) (LDW)<br><br>**REPORT & RECOMMENDATION** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is plaintiff Jennifer Zacharczuk's Motion To Enforce Settlement. (ECF Nos. 56, 57). Defendants oppose the motion and cross-move for sanctions against plaintiff. (ECF Nos. 58, 59). United States District Judge Susan Davis Wigenton referred this motion to the undersigned for a Report and Recommendation, which is hereby issued without oral argument, pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, the Court respectfully recommends the motion to enforce be **GRANTED** and the cross-motion for sanctions be **DENIED**.

I. BACKGROUND

Plaintiff's motion seeks to enforce a settlement that was reached in an ordinary manner, contains ordinary terms, and was memorialized on the record in an ordinary way. (*See* ECF Nos. 38, 47). The only thing extraordinary about this motion is that plaintiff was forced to file it in the first place – and worse, was forced to oppose defendants' improper cross-motion for sanctions. Because the parties manifested their unequivocal acceptance of all the essential terms of an enforceable settlement agreement on the record before the Court many months ago and plaintiff

has yet to receive the fruits of that settlement due to defendants' recalcitrance, the undersigned recommends that the Court enforce the settlement and deny defendants' cross-motion for sanctions.

Plaintiff commenced this action against her employer and its affiliates and owners, defendants Rego Trading, Inc., Basic Trucking, Inc., and Vladimir Shukhman in November 2019 for overtime compensation and other relief under the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*, and the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.* (Complaint ¶¶ 1-5, 13-17, ECF No. 1). According to the Amended Complaint, which incorporated an additional cause of action arising under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(d), plaintiff was an office assistant from 2011 until she was terminated in 2019, purportedly in retaliation for her complaints to the New Jersey Department of Labor regarding unpaid compensation. (Am. Complaint ¶¶ 4-7, ECF No. 21).

The undersigned began supervising discovery in the action after it was reassigned from another Magistrate Judge in November 2020. The Court conducted a case management conference in January 2021, during which the parties reported that settlement discussions were underway. (*See* ECF Nos. 27, 28). The undersigned thus referred the case to mediation through the District of New Jersey mediation program. (ECF No. 33). That mediation having been unsuccessful, the Court conducted its own settlement conference by Zoom videoconference on October 7, 2021.

At the settlement conference, the undersigned presided over negotiations between plaintiff and her counsel, on one side, and defendant Shukhman (on behalf of himself and both corporate defendants) and his counsel on the other. After several hours, a settlement was reached. Counsel for the parties then immediately prepared a settlement term sheet, which they e-mailed to the Court. (*See* ECF Nos. 57 at 2, 59 at 3). The same day, the Court convened a hearing on the record during

which the same settlement terms contained in the term sheet were reiterated on the record. Plaintiff and defendant Shukhman were asked whether they understood and agreed to the terms, to which both responded affirmatively. The Court also gave Mr. Shukhman an opportunity to inquire of it whether he had any questions about the settlement, which he said he did not. (ECF No. 47). Finally, the Court noted that although it understood that a formal written agreement would be executed memorializing the settlement that had been reached, the parties having "agreed to the essential terms of the settlement, those form a binding contract."[1] (*Id.* at 7). None disagreed.

Subsequently, counsel notified the Court that Mr. Shukhman had balked at entering into a written settlement agreement and was refusing to abide by the settlement placed on the record. The undersigned conducted an in-person Court conference on March 1, 2022 with Mr. Shukhman and counsel for both sides present, in an attempt to assuage any legitimate concerns with the settlement that Mr. Shukhman might have had. (*See* ECF No. 45). Those efforts were unsuccessful, and this motion followed. (ECF No. 51).

## II. ANALYSIS

Notwithstanding that the settlement at issue was reached on the record before the undersigned at the conclusion of many hours of Court-facilitated negotiations, defendants now insist that the agreement should not be enforced. They contend that the agreement is unenforceable

---

[1] Although the parties stated their intention subsequently to memorialize the settlement in a written agreement, the above-quoted statement by the Court made clear that the settlement terms placed on the record formed a binding agreement. Indeed, it is for precisely this reason that parties place settlement terms on the record – so that all involved understand that the settlement is enforceable, regardless of whether subsequent squabbling during the memorialization process prevents the signing of a final written agreement, as occurred here. *See e.g., Zong v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 632 F. App'x 692, 695 (3d Cir. 2015); *McDonnell v. Engine Distributors,* Civ. A. No. 03-1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007), *aff'd,* 314 F. App'x 509 (3d Cir. 2009); *Atlas Sys., Inc. v. Reddy,* Civ. A. No. 16-5381 (MAS) (TJB), 2020 WL 7251154, at *10 (D.N.J. Dec. 4, 2020).

because when the parties sought to memorialize the settlement in a comprehensive written settlement agreement after the essential material terms were placed on the record, plaintiff refused to include two terms defendants requested be contained in the written agreement. Neither of these terms had been among the essential terms placed on the record in Court. Defendants assert that plaintiff's refusal expressly to include plaintiff's counsel as a party to a confidentiality clause of the settlement agreement renders the settlement void as a product of "mutual mistake." (ECF No. 59 at 9). They further argue that plaintiff's refusal to include in the written agreement a representation that she never discussed this action with any former employees of defendants prior to entering the settlement constitutes a failure of a condition precedent to entering the agreement, as well as fraud in the inducement, rendering the settlement unenforceable. (ECF No. 59 at 10).

For the following reasons, the undersigned recommends that the motion to enforce be granted, as an enforceable settlement was indisputably reached upon the parties' representing their explicit understanding of and assent to all essential terms placed on the record before this Court. (ECF No. 47). Further, the undersigned recommends that defendants' cross-motion for sanctions against plaintiff be denied as baseless and procedurally improper.

    A.  **Motion To Enforce**

        1.  **Legal Standard**

The Court adjudicates a motion to enforce a settlement agreement under the same standard as a motion for summary judgment. *See Washington v. Klem*, 388 F. App'x 84, 85 (3d Cir. 2010) (per curiam). That is, the Court reviews the record to determine whether there exists a genuine dispute of material fact regarding the formation of an enforceable agreement. *JPMorgan Chase Bank, N.A. v. CMA Trading, Inc.*, Civ. A. No. 19-130 (SDW) (LDW), 2020 WL 4043954, at *2 (D.N.J. July 2, 2020), *report and recommendation adopted*, 2020 WL 4040801 (D.N.J. July 17,

2020). As settlement agreements are properly regarded as contracts, their enforceability is governed by state contract law. *See Tedesco Mfg. Co. v. Honeywell Int'l*, 371 F. App'x. 316, 319, (3d Cir. 2010) (quotation omitted). Because New Jersey has "a strong public policy in favor of settlements," courts in this state "strain to give effect to the terms of a settlement wherever possible," and settlements will be enforced "absent compelling circumstances." *Atlas Sys.*, 2020 WL 7251154, at *9; *Brundage v. Estate of Carambio*, 195 N.J. 575, 601 (2008).

A contract arises from offer, acceptance, and consideration. *Creek Ranch, Inc. v. New Jersey Turnpike Authority*, 75 N.J. 421, 430 (1978). That contract is enforceable if the parties agree on sufficiently definite essential terms and manifest an intention to be bound by those terms. *JPMorgan*, 2020 WL 4043954, at *2 (quoting *Natale v. E. Coast Salon Servs., Inc.*, Civ. No. 13-1254, 2016 WL 659722, at *2 (D.N.J. Feb. 18, 2016)). Under New Jersey law, "it is sufficient if the parties orally agree on the essential terms, 'even though they contemplate the later execution of a formal document to memorialize their undertaking.'" *McDonnell*, 2007 WL 2814628, at *3 (quoting *United States v. Lightman*, 988 F. Supp. 448, 459 (D.N.J. 1997)). So long as there has been agreement to the material terms, the settlement will be enforced against the parties even if efforts to reduce the agreement to writing fail because a party subsequently reneges. *Id.*

2. **Discussion**

On the face of the transcript, the parties plainly manifested their understanding of and agreement to all essential terms of the settlement and a binding contract was thus formed. (Tr. 6:9-14; 7:13-22). Nonetheless, defendants argue that the settlement should not be enforced. First, defendants assert that the agreement is unenforceable because it was their subjective understanding that plaintiff's counsel, as well as plaintiff, would be subject to the confidentiality term of the settlement. (ECF No. 59 at 7). They contend that the difference between the parties'

interpretations of the scope of the confidentiality clause demonstrates that they never achieved a meeting of the minds and further argue that the parties' interpretations of the confidentiality term constituted a "mutual mistake," rendering the settlement unenforceable. (ECF No. 59 at 9). Second, defendants claim that the settlement is invalid because they entered into the agreement on the belief that plaintiff had not spoken to another employee about the case prior to the Court-led settlement conference. (*Id.* at 10). Defendants allege that the settlement was conditioned upon plaintiff never having discussed her claims with anyone, and because she had, the agreement is unenforceable as a product of fraud. (*Id.*). Both arguments against enforcement are rejected.

### a. The confidentiality term is unambiguous and enforceable as expressed on the record.

As settlement agreements are contracts, they are "construed consistently with fundamental precepts of contract construction." *Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 318 (3d Cir. 1990). When determining if there was a meeting of the minds, it is the objective expression of terms, not one party's subjective understanding, that governs. *See Fogarty v. Household Fin. Corp. III*, Civ. A. No. 14-4525 (RBK) (JS), 2018 U.S. Dist. LEXIS 143551, *13 (D.N.J. 2018); *Leitner v. Braen*, 51 N.J. Super. 31, 38 (App. Div. 1958). This is a particularly important principle if the policy favoring enforcement of settlements is to have meaning, *Brundage*, 195 N.J. at 601, as in the course of a settlement conference, wide-ranging arguments and ideas often are discussed for hours before they are winnowed down to an agreement with particular terms. *See Atlas Sys.*, 2020 WL 7251154, at *9.

Here, the parties certainly agreed to confidentiality and manifested their assent to that term on the record before the undersigned, stating in relevant part, "The plaintiff agrees to full

6

confidentiality to the extent permitted by public policy of the settlement and settlement terms."[2] (ECF No. 47 at 4:23 to 4:25). What is disputed is whether this confidentiality clause includes plaintiff's lawyer. Defendants suggest that the above-quoted phrase used on the record in expressing confidentiality is ambiguous and maintain that it is reasonable to interpret the clause to encompass not only "the plaintiff" as stated, but also her attorney. (Tr. at 4:23). The Court does not agree.

Where, as here, the language of a contract is "reasonably capable of only one construction," the contract is unambiguous and should be enforced as stated. *Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997); *Integrated Health Res., LLC v Rossi Psychological Group, P.A.*, 537 F. Supp. 2d 672, 675 (D.N.J. 2008). The modifier "full" in the phrase "plaintiff agrees to full confidentiality" plainly means that plaintiff would be bound to abide by as much confidentiality as the law allowed, considering that public policy limits the confidentiality of some aspects of wage settlements. *See Brumley v. Camin Cargo Control, Inc.*, Civ. A. Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337 (D.N.J. Mar. 26, 2012). Given the construction of the clause and its reference to public policy, which places legal limits on "full confidentiality," defendants' hindsight argument that "full" was meant to denote that "the plaintiff" means not only plaintiff, but also her attorney, is unavailing. (ECF No. 59 at 6). Even assuming, *arguendo*, that defendants did hold this undisclosed understanding of the term at the time of contracting, "it is immaterial that [they had] a different, secret intention from that outwardly manifested." *Fogarty*, 2018 U.S. Dist. LEXIS 143551, *13 (quoting *Brawer v. Brawer*, 329 N.J. Super. 273, 283 (App. Div. 2000)).

---

[2] Because the details of the settlement are confidential, the Court does not describe them in this opinion. Only nonconfidential aspects of the settlement are referenced here, obviating any need to file this Report and Recommendation under seal. Specifically, the Court does not regard the expression of the confidentiality clause placed on the record as itself confidential, as the fact that the settlement was made confidential is evident from the public docket.

The confidentiality clause placed on the record having one clear and unambiguous meaning, the Court need look no further than the clause itself, which is enforceable as expressed. *See McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 238 (3d Cir. 2005) ("an unambiguous agreement should be enforced according to its terms"). Defendants' argument that the parties lacked a meeting of the minds on the scope of the confidentiality term of the settlement is therefore rejected. To the extent defendants request an evidentiary hearing on this issue, the Court further rejects that request. There are no disputed material facts for resolution at an evidentiary hearing; the confidentiality term expressed and agreed on the record is clear and unambiguous. *Tedesco*, 371 F. App'x at 319.[3]

The Court similarly rejects defendants' argument that the settlement is unenforceable on the grounds of "mutual mistake," as that basis for nonenforcement is inapplicable on this record. (ECF No. 59 at 9). Under New Jersey law, the doctrine of mutual mistake applies when the parties "met and reached a prior existing agreement, which the written document fails to express" and "*both* parties were laboring under the *same* apprehension as to [a] particular, essential fact." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015)

---

[3] The Court further notes the baselessness of defendants' conjecture that plaintiff's counsel intends to disclose the confidential settlement to others if the confidentiality clause does not explicitly include him. (ECF No. 59 at 8). It is apparent to the Court that plaintiff's counsel simply does not want to become a party to the settlement agreement, a common position of counsel in the undersigned's considerable experience overseeing settlement negotiations. This does not mean that he will not maintain the confidentiality of the agreement, as an agent of the plaintiff, who has promised confidentiality of the settlement terms. (ECF No. 47 at 7:13-22). Indeed, the New Jersey Rules of Professional Conduct appear to require it. Rule 1.6(a) provides, in relevant part, that a "lawyer shall not reveal information relating to representation of a client unless the client consents after consultation." Accordingly, plaintiff's attorney, as a matter of professional responsibility, is not free to divulge her confidential information arising from his representation without her consent. RPC 1.6(a). Plaintiff, however, has plainly agreed on the record to confidentiality of this settlement and its terms, so cannot herself provide consent to disclose that information. Plaintiff's refusal to explicitly include her counsel in the confidentiality clause is therefore immaterial and the clause will have its full effect as it was expressed on the record.

(quoting *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 560 (N.J. 1989) (emphasis in original)). Here, the parties clearly did not share the same "basic erroneous assumption of fact" – that plaintiff's counsel would be explicitly subject to the confidentiality clause. There is no competent evidence before the Court that plaintiff or her counsel ever believed that was a condition of the settlement, and the settlement placed on the record belies any such notion. Accordingly, the argument that the settlement fails for mutual mistake is meritless.

### b. The record fails to demonstrate that the settlement was subject to a condition and contains no evidence of fraud.

The second issue raised by defendants is equally inapt. Defendants claim they "believed that they were entering into a settlement that was predicated and conditioned upon the fact that Plaintiff had not spoken about this action to former employees, and that Plaintiff's silence in this regard was an express condition of their entering into the settlement." (ECF No. 59 at 5). As is clear from the hearing transcript, however, defendants never communicated such a condition to settlement while articulating the essential terms of the agreement. (ECF No. 47). If plaintiff's written averment that she had never spoken to any other employee was a prerequisite to settling, defendants should have made that known through an expression of that term on the record. *See Fogarty*, 2018 U.S. Dist. LEXIS 143551 at *13. It is the parties' objective manifestations, not unexpressed conditions only known to one side, that dictate the terms of an agreement. *Id.* at *22.

Defendants' argument that the agreement is unenforceable as a product of fraud is likewise rejected. Under New Jersey law, contracts induced by fraud may be deemed unenforceable upon showing of clear and convincing evidence. *Guido v. Guido*, 2014 N.J. Super. Unpub. LEXIS 2110, *20 (App. Div. 2014); *Hackensack Univ. Med. Ctr. v. Yinglian Xiao*, Civ. A. No. 2:17-2822-KM-MAH, 2018 WL 2095598, at *5 (D.N.J. May 7, 2018). Here, defendants proffer only that, at some

point during the Court-led settlement conference, plaintiff represented that she had not discussed the underlying case with any other employees, but that they subsequently learned that she had, in fact, spoken with someone prior to the October 7 conference. (ECF No. 59 at 5). The Court is unaware of what understanding defendants may have had of the facts leading up to settlement. Frankly, the Court cannot recall what the parties discussed on this point at the settlement conference given the many hours it spent in that conference and others since then. But what was "discussed" at the conference is patently irrelevant and does not require a deep dive into all participants' memories. If a representation from plaintiff on a particular point was an essential term of settlement, then it needed to be expressed on the record as part of the settlement. *See Fogarty*, 2018 U.S. Dist. LEXIS 143551, at *13; *Leitner*, 51 N.J. Super. at 38; *Atlas Sys.*, 2020 WL 7251154, at *9. The agreement, as reached and recorded before the undersigned, incorporated no representation on this issue, and the record therefore absent of any clear and convincing evidence that defendants did not enter into the settlement fairly and voluntarily, the Court finds no grounds to invalidate the agreement based on fraud. *See Guido*, 2014 N.J. Super. Unpub. LEXIS 2110, at *23. For all of the foregoing reasons, the undersigned respectfully recommends that the settlement be enforced.

### B. Defendants' Request For Sanctions

Defendants state in their opposition brief to the Motion To Enforce that they "cross-move for sanctions against Plaintiff, including to recover the attorneys' fees incurred by Defendants in defending this pointless motion." (Def. Opp. at 2, ECF No. 59). Defendants' counsel never sought nor was granted pre-motion leave to file a motion for sanctions, in violation of the undersigned's published Practices. More egregiously, the purported cross-motion is unaccompanied by a Notice

of Cross-Motion or even a brief that states the legal basis on which sanctions are sought, much less does it cite legal support for the issuance of sanctions.

The seeking of sanctions, of course, is a serious matter that must be undertaken with caution and restraint. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *United States v. Jones*, 505 F. App'x 192, 193 (3d Cir. 2012). This is why a prospective movant under Federal Rule of Civil Procedure 11 is required to follow an elaborate safe-harbor procedure before being permitted to file the motion. *See* Fed. R. Civ. P. 11(c)(2) (requiring motion papers to be served on adversary and passage of 21-day waiting period before filing with court). And such a sanctions motion may never be filed as a cross-motion, but rather "must be made separately from any other motion." *Id.*; *see Louis v. Deshmukh,* Civ. A. No. 21-19902, 2022 WL 2967243, at *5 (D.N.J. July 27, 2022). While defendants' cross-motion does not state whether sanctions are sought under Rule 11 or on some other basis, the same caveats of caution and restraint apply.

Defendants' "cross-motion" for sanctions is a procedurally improper and legally and factually unsupported motion. The Court is at a loss to discern any proper basis for its filing. It reluctantly concludes, therefore, that the demand for sanctions was made by defense counsel to appease an unreasonable client, which is extremely dismaying given counsel's concomitant duties to the Court. In any event, the undersigned recommends that the District Court deny defendants' improper cross-motion for sanctions.

### III. CONCLUSION

For the reasons stated above, this Court respectfully recommends that the Motion To Enforce be **GRANTED** and that defendants' purported cross-motion for sanctions be **DENIED.**

The parties are hereby advised that, pursuant to Fed. R. Civ. P. 73(b)(2), they have 14 days after being served with a copy of this Report and Recommendation to serve and file specific written objections to the Honorable Susan D. Wigenton, U.S.D.J.

Dated: August 30, 2022

                                                                **Leda Dunn Wettre**
                                               **United States Magistrate Judge**

Original:     Clerk of the Court
     cc:       Hon. Susan D. Wigenton, U.S.D.J.
               All Parties